UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATAGONIA, INC.,<br> Plaintiff,<br><br> v.<br><br> TP APPAREL, LLC, et al.,<br> Defendants. | CV 22-7430 DSF (AFMx)<br><br> Order GRANTING in part<br> Motion for Default Judgment<br> (Dkt. 44) |

Plaintiff Patagonia, Inc. seeks default judgment against Defendants Teesfreed, 365InLoveStore, Hadestee, HuaweiTee, Krusteez, and Sumpremiumstore News (collectively, Defaulting Defendants). Dkt. 44-1 (Mot.). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. The motion is GRANTED in part.

## I.    Background

Patagonia is a California corporation that designs, develops, markets, and sells outdoor apparel, accessories, and active sportswear. Dkt. 1 (Compl.) ¶ 1. Patagonia has engaged in that business for nearly fifty years, developing widespread brand and logo recognition throughout the world. Id. ¶¶ 1, 15. Patagonia advertises its brand in a variety of media, including on the Internet. Id. ¶ 19. Since at least 1973, the Patagonia brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline framed by a stormy sky (the P-6 Logo):



Id. ¶ 14.  Patagonia owns a registered copyright for the P-6 Logo (P-6 Logo Copyright), Registration No. VA 1-801-788.  Id.; Dkt. 44-5 (Copyright Registration).  Patagonia also owns numerous trademark registrations for its P-6 Logo and Patagonia word mark (the Patagonia Marks) covering a variety of products.  Compl. ¶ 17.  The federal trademark registrations include:

a.    U.S. Trademark Registration Number 1189402, a word trademark for the word "PATAGONIA."  It was first used in commerce in August 1974 and was registered on February 9, 1982.  It is registered for use in association with "Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear."

b.    U.S. Trademark Registration Number 1294523, a design trademark consisting of the word "patagonia" in stylized font on a silhouette of mountain peaks with a multicolored skyline.  It was first used in commerce in August 1974 and was registered on September 11, 1984.  It is registered for use in association with "Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts."

c.    U.S. Trademark Registration Number 1547469, a design trademark consisting of a silhouette of mountain peaks with a multicolored skyline.  It was first used in commerce in August 1974 and was registered on July 11, 1989.  It is registered for use in association with "Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts,

Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts."

d.    U.S. Trademark Registration Number 1775623, a design trademark consisting of the word "patagonia" in stylized font on a silhouette of mountain peaks with a multicolored skyline.  It was first used in commerce in August 1988 and was registered on June 8, 1993.  It is registered for use in association with "Luggage back packs, and all-purpose sports bags."

e.    U.S. Trademark Registration Number 1811334, a word trademark for the word "PATAGONIA."  It was first used in commerce in August 1990 and was registered on December 14, 1993.  It is registered for use in association with "Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves."

f.    U.S. Trademark Registration Number 2260188, a word trademark for the word "PATAGONIA."  It was first used in commerce in October 1995 and was registered on July 13, 1999.  It is registered for use in association with "Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing information in the field of existing and evolving environmental issues."

g.    U.S. Trademark Registration Number 2392685, a word trademark for the word "PATAGONIA."  It was first used in commerce in October 1995 and was registered on October 10, 2000.  It is registered for use in association with "On-line retail store and mail order services featuring technical clothing, footwear, and accessories; Computer services in the nature of online information related to the environment and clothing."

3

h.  U.S. Trademark Registration Number 2662619, a word trademark for the word "PATAGONIA."  It was first used in commerce in June 1986 and was registered on December 17, 2002.  It is registered for use in association with "Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories."

i.  U.S. Trademark Registration Number 5491401, a word trademark for the word "PATAGONIA."  It was first used in commerce in September 2014 and was registered on June 12, 2018.  It is registered for use in association with "Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers."

j.  U.S. Trademark Registration Number 5561006, a word trademark for the word "PATAGONIA."  It was first used in commerce in December 1991 and was registered on September 11, 2018.  It is registered for use in association with "Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs."

Id.  Patagonia has expended significant amounts of time, effort, and money advertising and promoting the products on which the Patagonia Marks and P-6 Logo Copyright are used throughout the world, including the United States and California.  Id. ¶¶ 19-20.  The Patagonia Marks and P-6 Logo Copyright enjoy strong consumer recognition and the Patagonia brand has become one of the most identifiable brands in the world.  Id. ¶¶ 20, 15.  Patagonia has acquired goodwill in the Patagonia Marks and P-6 Logo Copyright through its brand promotion, sales, and business initiatives.  Id. ¶ 20.

Defendant Hadestee is a company with unknown corporate status. Id. ¶ 7.  Defendants Teesfreed, 365InLoveStore, HuaweiTee, Krusteez, and Sumpremiumstore News are online sellers with unknown corporate status.  Id. ¶¶ 4-6, 8-9.  Defaulting Defendants offer, promote, sell, and have profited from products that bear designs and logos that

4

are similar to the copyright- and trademark-registered P-6 Logo
(Defaulting Defendants' Designs), replacing Patagonia's word marks
with other terms using Patagonia's distinctive font and stylization,
online throughout the country, for example:

**Teesfreed**



## 365InLoveStore



## Hadestee



## HuaWeiTee



## Krusteez



**Sumpremiumstore News**



Id. ¶ 21, 25.  Defaulting Defendants' Designs appear on products such
as shirts, hoodies, and sweatshirts that compete with those sold by
Patagonia.  Id. ¶¶ 21-22.  The P-6 Logo and Patagonia Marks became
famous years before Defaulting Defendants replicated the design.  Id.
¶ 24.  Defaulting Defendants promote and sell products with Defaulting
Defendants' Designs on their websites (Teesfreed through
https://www.teesfreed.com, 365InLoveStore through
https://365inlovestore.com, Hadestee dba Lemonstee through
https://lemonstee.com, HuaweiTee through https://2020huaweitee.com,
Krusteez through https://krusteez.com, and Sumpremiumstore News
through https://sumpremiumstore.com).  Id. ¶¶ 4-9.

Patagonia alleges that Defaulting Defendants' Designs have caused
or are likely to cause dilution of Patagonia's famous and distinctive
marks by diminishing their distinctiveness and singular association
with Patagonia.  Id. ¶ 24.  Patagonia also alleges that Defaulting
Defendants acted willfully by adopting the Patagonia Marks and P-6
Logo Copyright as part of their own branding.  Id. ¶ 25.  Patagonia
further alleges that without injunctive relief, it has no means to control

continuing injury to its reputation and goodwill or that of its Patagonia Marks and P-6 Logo Copyright, including through public confusion and damage to its licensing and collaboration programs.  Id. ¶ 26.

Patagonia asserts claims for Federal Trademark Infringement, 15 U.S.C. §§ 1114-1117; Federal Unfair Competition, 15 U.S.C. § 1125(a); Federal Dilution of Famous Mark, 15 U.S.C. § 1125(c); Federal Copyright Infringement, 17 U.S.C. §§ 101 et seq. and 17 U.S.C. §§ 501 et seq.; Trademark Infringement and Unfair Competition under California statutory law, Cal. Bus. & Prof. Code §§ 14200 et seq. and Cal. Bus. & Prof. Code § 17200 et seq.; Trademark Dilution under California law, Cal. Bus. & Prof. Cod § 14247; and Trademark Infringement under California common law.  Defaulting Defendants were served via email on January 19, 2023, dkts. 17-22, pursuant to the Court's order, dkt. 14.  The Clerk entered Defaulting Defendants' default on February 13, 2023.  Dkts. 30-35.  Patagonia alleges that as of May 31, Defendants Krusteez and Sumpremiumstore News continue to promote and offer products featuring Defaulting Defendants' Designs, and Defendant Krusteez is offering products with counterfeit reproductions of the Patagonia Marks and P-6 Logo Copyright. Dkt. 44-2 (Parhami Decl.) ¶ 9.

## II. Legal Standard

Rule 55(b)(2) permits the Court to enter a default judgment.  The Court need not make detailed findings of fact in the event of default.  Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990).  On entry of a default, well-pleaded allegations in the complaint regarding liability are generally deemed to be admitted.  DIRECTV, Inc. v Hoa Huynh, 503 F.3d 847, 851 (9th Cir. 2007).  Allegations as to damages, however, must be proven.  See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

The Court may consider several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the

9

action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III.  Analysis

### A.    The <u>Eitel</u> Factors

The <u>Eitel</u> factors weigh in favor of granting default judgment.

#### 1.    Prejudice to Plaintiff

Patagonia would be prejudiced by denial of its motion.  Defaulting Defendants cannot escape liability by refusing to participate in the judicial process, and Patagonia has incurred expenses in prosecuting this action.  This factor weighs in favor of default judgment.

#### 2.    Merits of Substantive Claims and Sufficiency of Complaint

The second and third factors require that a plaintiff's allegations "state a claim on which the [plaintiff] may recover.'" <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).  "Of all the Eitel factors, courts often consider the second and third factors to be the most important." <u>JFeld LLC v. Blanket Lovers</u>, No. CV 20-8804 DSF (PLAx), 2021 WL 2302447, at *2 (C.D. Cal. Apr. 29, 2021) (quotation marks omitted).  These factors weigh in favor of Patagonia for each claim.

##### a.    Trademark Infringement and Unfair Competition

Patagonia has shown a likelihood of succeeding on its federal and state trademark infringement and unfair competition claims.  To state a claim for trademark infringement under the federal Lanham Act, a plaintiff must allege: (1) ownership of a valid, legally protectable mark; and (2) a likelihood of confusion between the plaintiff's mark and a mark utilized by the defendant.  <u>S. Cal. Darts Ass'n v. Zaffina</u>, 762 F.3d

921, 929 (9th Cir. 2014).  Where, as here, a plaintiff's "unfair competition claim is based on alleged infringement of a registered mark, the legal analysis" for trademark infringement and unfair competition under the Lanham Act "is essentially identical."  Lodestar Anstalt v. Bacardi & Co. Ltd., 31 F.4th 1228, 1245 (9th Cir. 2022). Patagonia's federal and state trademark infringement and unfair competition claims are thus subject to the same legal test; the "crucial issue is whether the defendant's use of the plaintiff's service mark or trade name creates a likelihood of confusion for the public."  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (internal quotation marks omitted).

As to the ownership of a valid, legally protectable mark, federal registration of a trademark is prima facie evidence of the mark's validity, entitling the owner to a strong presumption that the mark is protectable.  15 U.S.C. § 1115(b); Zobmondo Ent., LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010).  Patagonia is the owner of the registered trademarks at issue.  Compl. ¶ 17.  The registered trademarks are presumed to be valid, legally protectable marks until shown otherwise.  Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 783 (9th Cir. 2002).

There is also a likelihood of confusion between the Patagonia Marks and the Defaulting Defendants' Designs.  The Ninth Circuit employs an eight factor test to determine the likelihood of confusion: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines."  Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 632 (9th Cir. 2008).  These factors "must be applied in a flexible fashion," and courts may decide based on only the factors most relevant to the case at hand.  Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012).

As to the first factor, two measurements of strength are conceptual strength and commercial strength.  Network Automation, Inc. v.

Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). Conceptually stronger marks—those that are arbitrary or fanciful rather than merely generic—receive greater trademark protection because there is greater likelihood that consumers will be confused by another's use of the mark. Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002). "'Arbitrary' marks are common words that have no connection with the actual product—for example, 'Dutch Boy' paint. 'Fanciful' marks consist of 'coined phrases' that also have no commonly known connection with the product at hand. Examples of fanciful marks include 'Kodak' cameras or 'Aveda' skin care products." Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 631-32 (9th Cir. 2005). The Patagonia word marks have no commonly known connection to the products for which they are registered. Commercial strength is based on actual marketplace recognition, so advertising expenditures can influence the strength of a mark. Network Automation, 638 F.3d at 1149. Patagonia alleged it has spent significant amounts of time, effort, and money advertising and promoting the products on which the Patagonia Marks are used, leading to the Patagonia brand being one of the most identifiable in the world. Compl.¶¶ 19, 15. This factor weighs in favor of providing strong protection.

As to the third factor, when analyzing similarity of marks, courts look to whether the marks are similar in sight, sound, and meaning, and similarities are weighed more heavily than differences. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 351 (9th Cir. 1979), abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n.19 (9th Cir. 2003). The Defaulting Defendants' Designs include artwork that is substantially similar to the registered P-6 Logo trademark, replacing Patagonia's word marks with other terms using Patagonia's distinctive font and stylization. Compl. ¶ 21. In the case of Defendants Krusteez and Teesfreed, the words appearing on Defaulting Defendants' Designs also sound and appear somewhat similar to the

12

Patagonia word marks, increasing the likelihood of confusion. See Id. ¶ 17; pp. 3-5. The third factor thus weighs in favor of Patagonia. [1]

The second and fifth factors also weigh in favor of Patagonia. "When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." Sleekcraft, 599 F.2d at 348. As discussed above, the Defaulting Defendants' Designs include artwork that is quite similar to the Patagonia Marks. Patagonia alleged that Defaulting Defendants produce goods, including shirts, hoodies, and sweatshirts, that compete directly with goods sold by Patagonia. Compl. ¶¶ 21-22. Both Patagonia and the Defaulting Defendants promote their products on the Internet. Id. ¶¶ 19, 12.

The sixth factor looks to whether a "reasonably prudent consumer" would take the time to distinguish between the two products when making a purchase. Surfvivor Media, 406 F.3d at 634. The similarity of goods or services offered can impact likely customer confusion. Brookfield Commc'n, Inc. v. West Coast Ent. Corp., 174 F.3d 1036, 1056 (9th Cir. 1999). "No clear standard exists for analyzing moderately priced goods, such as non-designer clothing." Surfvivor Media, 406 F.3d at 634. Given the similarity and character of the goods for which the Patagonia Marks are registered and those offered by the Defaulting Defendants, this factor weighs slightly in favor of Patagonia.

Factors four, seven, and eight are not relevant here. Thus, the Court finds there is a likelihood of confusion. See GoTo.com, Inc. v. Walt

---

[1] Patagonia has shown a likelihood of succeeding as to Trademark Nos. 1294523, 1547469, and 1775623, the design marks. The other Patagonia Marks (Trademark Nos. 1189402, 1811334, 2260188, 2392685, 2662619, 5491401, and 5561006) are word marks for the word "Patagonia." Defendants 365InLoveStore, Hadestee, HuaWeiTee, and Sumpremiumstore News do not use the word "Patagonia" or anything close to it. There is no likelihood of confusion between the registered word marks and Defendants' Designs because the words used by Defaulting Defendants are not similar.

Disney Co., 202 F.3d 1199, 1207 (9th Cir. 2000) (finding a high likelihood of confusion based on the three contextually most important factors; namely, that the plaintiff and defendant used similar marks, offered similar services, and used the Internet as their marketing channel).

The Court finds that Patagonia is likely to succeed on its federal and state trademark infringement and unfair competition claims as to all Defaulting Defendants for Trademark Nos. 1294523, 1547469, and 1775623 and as to Defendants Teesfreed and Krusteez for Trademark Nos. 1189402, 1811334, 2260188, 2392685, 2662619, 5491401, and 5561006.

### b.    Trademark Dilution

Patagonia is also likely to succeed on its federal dilution of a famous mark and state trademark dilution claims.  To state a claim for federal trademark dilution, a plaintiff must allege that "(1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." Jada Toys, 518 F.3d at 634 (citing 15 U.S.C. § 1125(c)(1); Cal. Bus. & Prof. Code § 14330). The analysis of trademark dilution claims under federal and California state law is the same.  Jada Toys, 518 F.3d at 634.

Patagonia has established the first element.  When evaluating famousness, courts can consider factors including (1) the duration, extent, and geographic reach of advertising and publicity of the mark, (2) the amount, volume, and geographic extent of sales offered under the mark, (3) the extent of actual recognition of the mark, and (4) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.  15 U.S.C. § 1125(c)(2)(A).  Patagonia has expended significant amounts of time, effort, and money advertising and promoting the products on which the registered Patagonia Marks are used around the world since the 1970s. Compl. ¶¶ 19, 14.  Patagonia alleged the Patagonia Marks enjoy

widespread consumer recognition throughout the United States, including California, and that the brand is one of the most identifiable in the world.  Id. ¶¶ 20, 15.  Patagonia has sufficiently alleged the Patagonia Marks are famous and distinctive for purposes of its trademark dilution claims.  See Patagonia, Inc. v. Anheuser-Busch, LLC, No. CV 19-2702 VAP (JEMx), 2019 WL 8754735, at *4 (C.D. Cal. Sept. 3, 2019) (finding Patagonia trademark 1,189,402 famous for a trademark dilution claim given the widespread recognition and advertising of the Patagonia brand and numerous federal registrations for the word mark and P-6 Logo).

Patagonia has also established that the Defaulting Defendants use the mark in commerce and began doing so after the Patagonia Marks became famous.  Patagonia alleged Defaulting Defendants offer, promote, and sell products that bear designs and logos that are similar to the Patagonia Marks.  Compl. ¶ 21.  See Rearden, 683 F.3d at 1203 (noting that use in commerce "means the bona fide use of a mark in the ordinary course of trade," such as on goods that are sold or transported in commerce) (quoting 15 U.S.C. § 1127).  Patagonia also alleged that it confirmed Defaulting Defendants began using Defaulting Defendants' Designs in September 2022, after the Patagonia Marks became famous.  Dkt. 13-1 ¶ 2; Compl. ¶ 24.

As to the fourth factor, dilution by blurring is "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark."  15 U.S.C. § 1125(c)(2)(B).  To determine whether a mark is likely to cause dilution of a famous mark by blurring, courts can consider relevant factors including (1) the degree of similarity between the mark and the famous mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the mark intended to create an association with the famous mark; and (6) any association between the mark or trade name and the famous mark.  Id.; see also Levi Strauss Co. v. Abercrombie & Fitch Trading Co., 633 F.3d 1158, 1172 (9th Cir. 2011) (noting that a plaintiff does not need to show

15

the marks are identical, nearly identical, or substantially similar in order to obtain injunctive relief).

Factors one, two, four, and five weigh in favor of Patagonia. As discussed above, Patagonia sufficiently alleged that the Patagonia Marks and Defaulting Defendants' Designs are similar, and that the Patagonia Marks are famous and distinctive. Patagonia also alleged that Defaulting Defendants' Designs have caused or are likely to cause dilution of Patagonia's famous and distinctive marks by diminishing their distinctiveness and singular association with Patagonia. Compl. ¶ 24. Patagonia alleged that Defaulting Defendants acted willfully by adopting the Patagonia Marks as part of their own branding. Id. ¶ 25. Taking the well-pleaded allegations in the complaint to be true, Patagonia has shown a likelihood of succeeding on its trademark dilution claims.[2] See, e.g., Patagonia, Inc. v. McHugh, No. CV 19-7666 JAK (AFMx), 2020 WL 4258818, at *4 (C.D. Cal. Apr. 21, 2020) (holding that plaintiff made a sufficient showing of trademark dilution based in part on the complaint's allegations of dilution); see also HomeGoods, Inc. v. Papanicolaou, No. CV 19-6912 CJC (PLAx), 2019 WL 7171541, at *5 (C.D. Cal. Dec. 4, 2019) (holding plaintiff sufficiently alleged dilution by blurring for a default judgment where its registered mark was famous and recognizable, and defendant's mark was highly similar).

The Court finds that Patagonia is likely to succeed on its trademark dilution claims as to all Defaulting Defendants for Trademark Nos. 1294523, 1547469, and 1775623 and as to Defendants Teesfreed and Krusteez for Trademark Nos. 1189402, 1811334, 2260188, 2392685, 2662619, 5491401, and 5561006.

---

[2] Again, Patagonia has shown a likelihood of succeeding as to Trademark Nos. 1294523, 1547469, and 1775623, the design marks. With the exception of the designs of Defendants Teesfreed and Krusteez, there is little or no similarity between Patagonia's registered word marks and Defendants' Designs.

### c.   Copyright Infringement

Patagonia has shown a likelihood of succeeding on its copyright claim.  To state a claim for copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) copying of protected elements of the work.  Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 984 (9th Cir. 2017); see also Star Fabrics, Inc. v. Time Less Inc., No. CV 16-7789 SJO (AGRx), 2017 WL 8229553, at *4 (C.D. Cal. Apr. 21, 2017) (finding a complaint sufficient for the purposes of default judgement in a copyright infringement action where the plaintiff alleged ownership of a registered copyright and alleged and provided photographic evidence that defendants produced designs "that, at least to some degree, appear[ed] quite similar" to plaintiff's copyrighted design).

As to the first element, copyright "registration made before or within five years after first publication of the work" creates a presumption of a valid copyright.  17 U.S.C. § 410(c).  The "evidentiary weight to be accorded the certificate of a registration" made after five years is within the court's discretion.  Id.  Patagonia alleged it is the owner of the registered copyright for its P-6 Logo and provided the copyright registration.  Compl. ¶ 17; see also Copyright Registration.  The P-6 Logo was first published on April 1, 1983.  Copyright Registration at 2. Patagonia obtained the copyright registration more than five years after the logo was first published.  Id.  The registration indicates the copyrighted work is titled "Patagonia & Mountain Design," id., and includes an attached image of the P-6 Logo, id. at 4.  The Court finds the copyright registration, id. at 2, the allegations in the complaint, Compl. ¶ 17, and the declaration of Patagonia's attorney, Parhami Decl. ¶ 8, are sufficient evidence of a valid copyright.  See Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc., 923 F. Supp. 1231, 1242 (N.D. Cal. 1995) (holding registrations obtained more than five years after publication were strong evidence of valid copyright where defendant did not present any persuasive challenge).

Because direct evidence of copying is often unavailable, a plaintiff can establish copying using circumstantial evidence of (1) a defendant's

access to the copyrighted work and (2) substantial similarity of general ideas and expression between the works.  Unicolors, 853 F.3d at 984-85.  Access can be inferred through "proof of similarity which is so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded."  Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984); see also Unicolors, 853 F.3d at 985.  Patagonia alleged Defaulting Defendants offered, promoted, and sold products containing substantially similar copies of the P-6 Logo design.  Compl. ¶ 21.  Patagonia provided photographs of examples of Defaulting Defendants' Designs, which are nearly identical to the P-6 logo.  Id. pp. 3-5.  The complaint adequately alleges similarity supporting copying.  See Unicolors, 853 F.3d at 988 (holding copying could be inferred given the striking similarity between the designs notwithstanding slight variances in the details of the patterns).

The Court finds that Patagonia is likely to succeed on its copyright claims.

This factor weighs in favor of default judgment.

### 3.    The Sum of Money at Stake

The Court must balance "the amount of money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1176 (2002).  Patagonia requests an award of $30,000 in statutory damages against each Defaulting Defendant based on Defaulting Defendants' copyright infringement.  Mot. at 16.  Patagonia is unable to ascertain actual damages without Defaulting Defendants' engagement in the litigation process.  For reasons provided below, the Court finds $30,000 in statutory damages is proportional to the harm caused.  This factor weighs in favor of default judgment.

### 4.    Possibility of Factual Dispute

The fifth factor considers the likelihood of dispute between the parties concerning material facts in the case.  The Court may assume the truth of the well-pleaded facts in the complaint following the clerk's entry of default.  The likelihood that any genuine issue of material fact

18

exists is low.  See, e.g., Elektra Ent. Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (finding that because all allegations in a well-pleaded complaint are taken as true, "there is no likelihood that any genuine issue of material fact exists").  This factor weighs in favor of default judgment.

### 5.    Default Due to Excusable Neglect

The sixth factor considers the possibility that default resulted from Defaulting Defendants' excusable neglect.  "This factor favors a default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit."  Zlozower v. Women.com, Inc., No. CV 22-3856 JLS (JCx), 2023 WL 3432249, at *4 (C.D. Cal. Mar. 13, 2023) (citing PepsiCo, 238 F. Supp. 2d at 1177).  Patagonia served Defaulting Defendants via email on January 19, 2023.  Dkts. 17-22.  Pursuant to the Court's order, this was proper service.  Dkt. 14 at 2-3 (granting ex parte application to serve by email after in-person attempts failed but Patagonia had successfully communicated with Defaulting Defendants via email); see also Cal. Civ. Proc. Code § 413.30 (allowing a court to "direct that a summons be served in a manner which is reasonably calculated to give actual notice"); Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  This factor weighs in favor of default judgment.

### 6.    Policy Favoring Decision on the Merits

Generally, default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  But "where a defendant fails to appear and respond[,] . . . a decision on the merits is impossible and default judgment is appropriate."  Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012).  Here, Defaulting Defendants failed to appear or respond to communications.  A decision on the merits is impossible.  This factor weighs in favor of default judgment.

* * *

19

## B.     Remedies

### 1.     Damages

Patagonia seeks damages based only for Defaulting Defendants' copyright infringement.  A plaintiff in a copyright infringement suit may elect to recover either actual damages and profits or statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  In cases where the plaintiff demonstrates the defendant willfully infringed on the copyright, the court can increase statutory damages to no more than $150,000.  Id. § 504(c)(2).  "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  Unicolors, 853 F.3d at 991 (quotation marks omitted).

The Court has "wide discretion in determining the amount of statutory damages to be awarded."  L.A. News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998).  Courts consider "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like."  Id.

"Where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages" are appropriate.  Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc., 106 F.3d 284, 294 (9th Cir. 1997), rev'd sub nom. on other grounds, Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340 (1998).  Patagonia alleged each Defaulting Defendant has separately infringed its registered copyright.  Compl. pp.3-5, ¶¶ 21-26.  Thus, separate awards of statutory damages are appropriate.

Patagonia seeks $30,000 from each Defaulting Defendant for their alleged willful direct infringement of Patagonia's copyright.  Mot. at 15-16; see also Compl. ¶ 25.  Defaulting Defendants' failure to answer the complaint deprived Patagonia of the opportunity to discover the profits made or expenses saved by Defaulting Defendants because of the

infringement.  A court may also infer that a defendant's infringement was willful when a defendant defaults.  <u>KCI Newport, Inc. v. Smoke Tokes, LLC</u>, No. CV 15-7694 RSWL (PJWx), 2016 WL 2885859, at *7 (C.D. Cal. May 17, 2016).  The Court finds that awarding $30,000 in statutory damages against each defendant is appropriate to account for Defaulting Defendants' willful infringement and to deter Defaulting Defendants and those like them who seek to unjustly profit from the work of others.  <u>See, e.g.</u>, <u>Columbia Pictures Television, Inc. v. Krypton Broadcasting of Brimingham, Inc.</u>, 259 F.3d 1186, 1191 (9th Cir. 2001) (finding a lower court did not abuse its discretion by denying a new trial based on allegedly excessive damages of $72,000 for each willfully infringed work); <u>Starbucks Corporation v. Glass</u>, No. CV 16-3937 ODW (PJW), 2016 WL 6126255, at *8 (C.D. Cal. Oct. 20, 2016) (finding the statutory maximum of $150,000 per work was reasonable in light of plaintiff's inability to fully ascertain exact damages in the default context and the preeminence of its marks).

### 2.    Permanent Injunction

Patagonia also seeks a permanent injunction prohibiting Defaulting Defendants from infringing its trademarks and copyright. "It is well established that courts can issue injunctions as part of default judgments." <u>China Cent. Television v. Create New Technology (HK) Ltd.</u>, No. CV 15-1869 MMM (AJWx), 2015 WL 12732432, at *19 (C.D. Cal. Dec. 7, 2015) (internal quotation marks omitted).  Courts may grant injunctions on reasonable terms for violations of the Lanham Act and Copyright Act.  15 U.S.C. § 1116(a); 17 U.S.C. § 502(a).  A permanent injunction is appropriate where a plaintiff demonstrates (1) it has suffered irreparable injury, (2) remedies available at law are inadequate, (3) an equitable remedy is warranted considering the balance of hardships between the plaintiff and defendant, and (4) it is in the public's interest to issue a permanent injunction.  <u>eBay Inc. v. MercExchange, LLC</u>, 547 U.S. 388, 391 (2006). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." <u>Id.</u>; <u>see also</u> <u>Robinson v. Best Price Distributors, LLC</u>, No. CV 21-6689 RGK (JCx), 2023 WL 2203584, at *3 (C.D. Cal. 2023) (applying the <u>eBay</u> factors to determine the

appropriateness of injunctive relief for both copyright and trademark infringement).

All four factors are met here and warrant an injunction against all Defaulting Defendants for copyright and trademark infringement.

Patagonia has demonstrated irreparable injury due to trademark and copyright infringement as to all Defaulting Defendants.  A plaintiff seeking a permanent injunction for trademark infringement is entitled to a presumption of irreparable harm upon a finding of a violation.  15 U.S.C. § 1116(a).  In a copyright infringement action, a plaintiff must demonstrate irreparable harm to obtain injunctive relief.  Flexible Lifeline Systems, Inc. v. Precision Lift, Inc., 654 F.3d 989, 998 (9th Cir. 2011); see also Hooks for and on Behalf of NLRB v. Nextar Broad., Inc., 54 F.4th 1101, 1115 (9th Cir. 2022) (noting that Supreme Court decisions abrogated prior Ninth Circuit ruling adopting a presumption of irreparable harm after showing a likelihood of success in copyright infringement claim).  Patagonia has shown as much.  It alleges that without injunctive relief, it has no means to control continuing injury to its reputation and the goodwill of the P-6 Logo Copyright, including through public confusion and damage to its licensing and collaboration programs, as a result of Defaulting Defendants' conduct.  Compl. ¶ 26. "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm."  Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013).

That some Defaulting Defendants are no longer selling the infringing products does not negate the finding of irreparable harm. Mot. at 19 (conceding that Teesfreed, 365InLoveStore, Hadestee, and HuaweiTee are not currently selling infringing products).  Voluntary cessation of the infringing activities can, in some cases, serve to defeat a finding of irreparable harm.  Vital Pharms. v. PhD Marketing, Inc., No. CV 20-6745 RSWL (JCx), 2021 WL 6881866, at *5 (C.D. Cal. Mar. 12, 2021) ("if the non-movant has or will soon cease the allegedly infringing activities, the harm is not considered irreparable.") (quotation marks omitted).  But "defendant[s'] lack of participation in th[e] litigation has given the court no assurance that defendant[s']

22

infringing activity will cease." Jackson v. Sturkie, 255 F.Supp.2d 1096, 1103 (N.D. Cal. 2003).

Second, there is no adequate remedy at law. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Estate, 846 F.2d at 1180.

Third, the balance of harms tips toward Patagonia because Defaulting Defendants are merely precluded from engaging in illegal behavior. See Wecosign, 845 F. Supp. at 1084 ("[T]he balance of hardships favors Plaintiff because without an injunction, Plaintiff will lose profits and goodwill, while an injunction will only proscribe Defendants' infringing activities.").

Fourth, the public is served by a permanent injunction. "The public interest is served in protecting the holders of valid copyrights from infringing activity." Taylor Corp. v. Four Seasons Greetings, LLC, 315 F.3d 1039, 1042 (8th Cir. 2003). "In the trademark context, courts often define the public interest as the right of the public not to be deceived or confused." CytoSport, Inc. v. Vital Pharm, Inc., 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009), aff'd, 348 Fed. App'x 288 (9th Cir. Oct. 13, 2009). And Patagonia has alleged that Defaulting Defendants' infringement has caused or will cause consumer confusion. Compl. ¶ 23.

Defaulting Defendants, their principals, officers, agents, employees, attorneys, successors, assigns, affiliates, joint ventures, and any person(s) in active concert or participation with Defaulting Defendants, and/or any person(s) acting for, with, by, through, or under their control, who receive(s) actual notice of this Order, are permanently enjoined and restrained, anywhere in the world, directly or indirectly, from doing, authorizing or procuring any persons to do any of the following until such time as this Order is vacated or modified by further Court order:

23

(a) Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying any goods or services, or participating in the manufacture, license, sale, offer for sale, distribution, import, export, advertisement, promotion, or display of any goods or services, that display any of the Defaulting Defendants' Designs found to be infringing in this lawsuit or any other designation or design infringing on the Patagonia Marks or P-6 Logo Copyright for which Defaulting Defendants have been found liable for infringement in this Order;

(b) Manufacturing, licensing, selling, offering for sale, distributing, importing, exporting, advertising, promoting, or displaying any goods or services, or participating in the manufacture, license, sale, offer for sale, distribution, import, export, advertisement, promotion, or display of any goods or services, that display a copy of Patagonia's copyrighted P-6 design, or any other graphic that is substantially similar to the P-6 design;

(c) Using any word, term, name, symbol, device, or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defaulting Defendants or their products or services with Patagonia, or as to the origin of Defaulting Defendants' goods or services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

(d) Further infringing the rights to the Patagonia Marks as to which Defaulting Defendants have been found liable for infringement, or otherwise damaging Patagonia's goodwill or business reputation;

(e) Further diluting the Patagonia Marks;

(f) Assisting, aiding or abetting any person or entity engaging in or performing any act prohibited by this Order.

### 3.    Attorneys' Fees

In a Copyright Act suit, the Court may award fees and costs.  17 U.S.C. § 505; see also Elektra Ent. Grp. Inc., 226 F.R.D. at 395.  The

Lanham Act also allows a plaintiff to recover the costs of a successful trademark infringement action; "the court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117 (a). Patagonia seeks an award of $2,400. Mot. at 21-22.

A court may look to several nonexclusive factors in determining whether to award fees to the prevailing party under the Copyright Act. These factors are: (1) frivolousness; (2) motivation; (3) the objective unreasonableness of the losing party's factual and legal arguments; (4) the need, in particular circumstances, to advance considerations of compensation and deterrence; (5) the degree of success obtained; (6) the purposes of the Copyright Act; and (7) "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." Ets-Hokin v. Skyy Spirits, Inc., 323 F.3d 763, 766 (9th Cir. 2003). Factors five and six weigh in favor of awarding fees. Patagonia has been successful in its copyright infringement claim. Awarding fees here serves the purpose of the Copyright Act to encourage litigation of meritorious claims to promote "the production of original literary, artistic, and musical expression for the good of the public." Fogerty v. Fantasy, Inc., 510 U.S. 517, 524 (1994). The remaining factors do not apply.

Similarly, when analyzing a request for fees under the Lanham Act, district courts in the Ninth Circuit look at the totality of the circumstances to determine if a case is exceptional considering nonexclusive factors such as one through four of the Ets-Hokin factors above. SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd., 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam). "Previously, the Ninth Circuit's test required a plaintiff to show that a defendant engaged in 'malicious, fraudulent, deliberate, or willful infringement' [to demonstrate an exceptional case.] . . . Because the SunEarth test is less stringent than the previous 'willful infringement' standard, it stands to reason that . . . willful infringement would satisfy the SunEarth test." Jason Scott Collection, Inc. v. Trendily Furniture, LLC, 68 F.4th 1203, 1223 n.13 (9th Cir. 2023). Patagonia alleges the Defaulting Defendants willfully infringed on the Patagonia Marks. Compl. ¶ 25. Additionally, Defaulting Defendants failed to respond to

this action.  Therefore, it is appropriate for the Court to grant Patagonia reasonable fees.  See 3M Co. v. G7 Env't, LLC, No. CV 20-8892 PA (AFMx), 2021 WL 2935659, at *7 (C.D. Cal. June 9, 2021) (citation omitted) (noting a case may be deemed exceptional where a defendant disregards the proceedings and does not appear).

Local Rule 55-3 determines attorneys' fees for a default judgment according to a fixed percentage schedule.  L.R. 55–3.  For any amount of judgment between $10,000.01-$50,000, the schedule of attorneys' fees allows $1,200 plus 6% of the amount of damages awarded over $10,000.  Id.  Patagonia was granted a default judgment of $30,000 from each of the Defaulting Defendants.  Mot. at 21-22.  Patagonia seeks $2,400 in fees (6% of 20,000 added to $1,200).  Id.  The Court awards $2,400 in attorneys' fees.

## IV. Conclusion

Patagonia's motion for default judgment is GRANTED in part. Patagonia is awarded $30,000 in statutory damages from each Defaulting Defendant, for a total of $180,000, and $2,400 in fees. Defaulting Defendants are permanently enjoined from infringing the Patagonia Marks as provided in this Order and the Judgment.

IT IS SO ORDERED.


Date: August 1, 2023

Dale S. Fischer
United States District Judge

26